Steven POMPLUN, Plaintiff-Appellant,

v.

ROCKWELL INTERNATIONAL CORPORATION and Allen-Bradley Company, Inc., Defendants-Respondents,

CLEARING INTERNATIONAL, INC., Clearing-Niagara, Inc., Production Equipment, Inc., Verson International Group, Inc., U.S. Industries, Inc., ABC Insurance Company, XYZ Insurance Company, EFG Insurance Company, and Fireman's Fund Insurance Company, Defendants.

Court of Appeals

*No. 95–2689. Submitted on briefs May 13, 1996.—Decided June 25, 1996.*

(Also reported in 552 N.W.2d 632.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Mark J. Goldstein* of *Padway & Padway, Ltd.*, of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Donald H. Carlson* and *Mary E. Nelson* of *Crivello, Carlson, Mentkowski & Steeves, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

FINE, J. Steven W. Pomplun appeals from an order granting summary judgment and dismissing his claim against Rockwell International Corporation and Allen-Bradley Company, Inc. This action arises out of an injury Pomplun received while operating a punch press during the course of his employment with Phoenix Products Company, Inc. On appeal, Pomplun argues that the trial court erred in granting Rockwell

International and Allen-Bradley's motion for summary judgment.[1] We affirm in part and reverse in part.

## I.

Pomplun was injured while operating a press using a foot switch manufactured by Allen-Bradley to punch circles from sheets of plastic. He inadvertently hit the foot switch and activated the press as he reached for a sheet of plastic. He claims that both the punch press, which the complaint alleges was manufactured and sold by Clearing International, Inc., Clearing-Niagara, Inc., and Verson International Group, Inc., and the foot switch were dangerously defective and that the defendants were liable in negligence and strict liability. Pomplun also alleged that Allen-Bradley and the others failed to warn about the dangers posed by the foot switch and punch press.

Allen-Bradley filed a motion for summary judgment seeking dismissal of Pomplun's claims. The trial court granted the motion, concluding that there were no genuine issues of material fact, that the foot switch on the punch press was not defective, and that Allen-Bradley was under no duty to warn Pomplun about any possible dangers inherent in the foot switch.

## II.

Summary judgment is appropriate only when the moving party establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476-477 (1980). The trial

---

[1] Allen-Bradley is now an owned subsidiary of Rockwell International Corporation.

court may not base its ruling on its assessment of the weight of the evidence or the witnesses' credibility, but must deny summary judgment sought by a defendant if the plaintiff presents any evidence upon which a jury could reasonably find in the plaintiff's favor. *Id.*, 97 Wis. 2d at 338–339, 294 N.W.2d at 476–477.

1. *Design Defect.*

Pomplun's expert presented sufficient evidence to compel a trial on the issue of whether the design of the foot switch was defective. Pomplun's expert submitted an affidavit in which he opined that the foot switch "had inadequate foot pressure resistance, allowing for inadvertent operation of the press." He also concluded that "the travel of the footswitch [*sic*] was inadequate to minimize inadvertent tripping of the footswitch [*sic*]." Summary judgment was improvidently granted on the design-defect issue.

2. *Failure to Warn.*

Failure-to-warn is a theory of recovery that is separate from a claim alleging defective design. *See Gorton v. American Cyanamid Co.*, 194 Wis. 2d 203, 221, 533 N.W.2d 746, 754 (1995). Whether a manufacturer has a legal duty to warn users of dangers related to the use of its product is a question of law that this court decides *de novo*. *Estate of Schilling v. Blount, Inc.*, 152 Wis. 2d 608, 617–618, 449 N.W.2d 56, 60 (Ct. App. 1989). Pomplun argues that Allen-Bradley had a duty to warn him of the dangers involved in using the foot switch. On the other hand, Allen-Bradley contends that as a mere component-part manufacturer—it manufactured the

foot switch and not the entire punch press—it did not have a duty to warn Pomplun of any possible operating hazards inherent in the use of the switch in the punch press. We agree with Allen-Bradley.

Although Wisconsin courts have not addressed this issue previously, authority elsewhere supports the logic of Allen-Bradley's contention. In *Shanks v. A.F.E. Industries, Inc.*, 416 N.E.2d 833 (Ind. 1981), the court concluded that A.F.E., a manufacturer of an automatic grain dryer, a component part in a grain elevator, had no duty to warn that an elevator leg was about to be activated during the "unload" phase of the dryer. Shanks had argued that there was a defect in the dryer because it did not have a safety device that would indicate that the elevator was about to activate. *Shanks* ruled that component manufacturer had no duty to warn, and reasoned:

> Because the dryer could be used as a component in a multifaceted complex such as the one created here by Whittington, to allow a jury to examine, in retrospect, the wisdom of A.F.E.'s incorporating some lights or bells into the dryer is to permit nothing more than speculation. A complex operation such as this one could have taken many forms, depending on the needs of the owner and the imagination of the designer. . . . The need for any warning devices, and the circumstances surrounding their use, would, of course, depend upon the operation of the whole complex, based upon the features of its design. Thus, because the dryer could be incorporated into a variety of grain handling systems, the desirability or need for such devices could be determined only after any given type of complex had been chosen and created. Of course, A.F.E. here had no way of knowing exactly how Whittington would employ its dryer

and, hence, the specific context in which such warning devices could or should be used relative to the operation of an elevator leg.

*Id.*, 416 N.E.2d at 838. By the same token here, there is nothing in the record to show that Allen-Bradley either knew or had reason to know how the manufacturer of the press would incorporate the foot switch into the overall design of the press. Indeed, an uncontroverted affidavit submitted on behalf of Allen-Bradley noted that the foot switch "was an 'off the shelf,' general purpose, on/off switch for foot activation [that was] not manufactured and sold specifically for the Clearing press which [Pomplun] was operating when he was injured." Thus, Allen-Bradley had no duty to warn Pomplun of possible dangers that might or might not result, and that might depend on the operation of components other than the foot switch. The trial court properly granted Allen-Bradley's motion for summary judgment on the duty-to-warn issue.

*By the Court.*—Order affirmed in part and reversed in part.